UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW HESS,

          Plaintiff,          Case Number 21-10255

v.                                           Honorable David M. Lawson

POSITIVE ENERGY FLEET, LLC,

          Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS
## AND TO COMPEL ARBITRATION

Plaintiff Andrew Hess sued his employer, defendant Positive Energy Fleet, LLC, for violating the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), alleging that it did not pay him an overtime premium wage for hours worked in excess of 40 per week.  Hess also had a relationship with Positive Energy as a member of the LLC, which was memorialized in an Operating Agreement.  The Operating Agreement contains an arbitration clause, which, Positive Energy insists, requires that Hess arbitrate his FLSA claim.  Positive Energy filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), contending that the Court does not have jurisdiction to hear Hess's claim and that he should be compelled to proceed in an arbitral forum. However, an arbitration clause does not implicate subject matter jurisdiction, and the clause itself focuses on the operating agreement and does not cover employment disputes, which the plaintiff never agreed to arbitrate.  Therefore, the motion will be denied.

I.

Hess was hired in August 2018 as Positive Energy's Chief Operations Officer.  He alleges that, although he regularly worked more than 40 hours per week, the defendant did not pay him overtime.  He says that he worked at least 10 hours of overtime each week over a period of roughly

two years. Despite his title, he alleges that his role nevertheless did not rise to the level of an executive employee.

Positive Energy alleges that Hess was a "C-Suite" executive by his own insistence. According to an affidavit submitted by Positive Energy CEO Cynthia Cichon, Hess conditioned his relationship with the defendant on his being Chief Operations Officer, with all of the executive-level duties attendant to that position. Hess also allegedly insisted on being made an owner of the business and invested $50 to acquire a 5% ownership interest in Positive Energy.

To memorialize their relationship as owners of Positive Energy, the parties signed an Operating Agreement in January 2019. The Operating Agreement was by and among only Cichon and the plaintiff, and "each other person who after the date hereof becomes a member of the Company," of which, apparently, there were none. Operating Agreement, ECF No. 7-1, PageID.54. The Operating Agreement addressed several aspects of the rights and obligations of the LLC members, such as capital contributions, membership interests, and allocations and distributions. The Agreement does not discuss an employment relationship between the member and the company, except to say that "[t]he Members shall not receive compensation for personal services provided to the Company unless otherwise agreed to in writing by the Members." *Id.* at PageID.62. The Agreement apparently contemplates that a member could be employed by the company under a separate employment agreement, allowing a member to engage in potentially competitive activities "[e]xcept as otherwise restricted or prevented under a Member's employment agreement or other similar agreement with the Company." *Ibid.* The Agreement itself, however, does not establish an employment relationship or set out any terms or conditions of employment.

The Agreement specifically authorizes members to enforce capital contributions from delinquent members "in a court of appropriate jurisdiction in the county in which the principal office of the Company is located," and states that "[e]ach Member expressly agrees to the jurisdiction of such court." *Id.* at PageID.56.  Somewhat inconsistently, the Agreement also contains an arbitration clause, which mandates an arbitration procedure for "[a]ny and all disputes, claims or controversies involving the interpretation of this Agreement or any of the provisions, terms, conditions, termination or enforcement of a Member's obligations or rights thereunder." *Id.* at PageID.78-79.  The clause requires that any such disputes be submitted in writing by one member to the other within 30 days of occurrence, so that the members may meet within 45 days to negotiate a good-faith resolution. *Ibid.*  If disputes are not resolved within 45 days of a meeting, they must be submitted to binding arbitration under the provisions of the Agreement and the common law and statutes of Michigan, including the Michigan Uniform Arbitration Act. *Ibid.*

Positive Energy terminated Hess's employment on September 14, 2020.  On September 28, 2020, Hess's lawyer submitted written notice to the defendant of a "dispute" under the Operating Agreement.  In subsequent communications, the lawyers for the parties reiterated that the notice constituted a "dispute notice" under the arbitration clause.  On October 26, 2020, Positive Energy's lawyer wrote in an email that "my client considers your letter of September 28, 2020 and October 19, 2020 as Dispute Notices." MTD, ECF No. 5, PageID.27, 36.  Hess's attorney responded, "I agree," and noted that his September 28 letter "itself could not be any more clear on that point." *Id.* at PageID.28.  The defendant alleges that these written notices pertained to Hess's FLSA claim, although that inference it is not clear from the complaint or the exhibits.

Hess filed his complaint on February 3, 2021, pleading one Fair Labor Standards Act claim. The plaintiff filed an amended complaint on April 2, 2021. Positive Energy responded with a motion to dismiss and compel arbitration.

II.

Positive Energy has styled its motion as a challenge to the Court's subject matter jurisdiction, invoking Federal Rule of Civil Procedure 12(b)(1). "However, there are several reasons why efforts to enforce a contractual arbitration clause should not be treated as an attack on the court's subject matter jurisdiction." *Big City Small World Bakery Cafe, LLC v. Francis David Corp.*, 265 F. Supp. 3d 750, 756 (E.D. Mich. 2017). For one, "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Viewed that way, an arbitration clause is more like a claim-processing rule than a restriction on the Court's adjudicatory authority. *Big City*, 265 F. Supp. 3d at 756-57 (citing *Primax Recoveries, Inc. v. Gunter,* 433 F.3d 515, 518-19 (6th Cir. 2006)) ("Clarity would be facilitated . . . if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.").

That distinction is fortified by the reality that parties can waive arbitration either explicitly, through delay in demanding arbitration, or by conduct inconsistent with the arbitration agreement. *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012); *see also Shy v.*

*Navistar Int'l Corp.*, 781 F.3d 820, 827-28 (6th Cir. 2015). "Waiver of arbitration in a case that otherwise is governed by an arbitration clause amounts to an agreement to confer subject-matter jurisdiction upon a federal court[, which] runs counter to accepted jurisprudence." *Big City*, 265 F. Supp. 3d at 757 (citing *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 n.1 (9th Cir. 1993)) ("The parties cannot . . . create federal court subject matter jurisdiction by stipulation"); *American Policyholders v. Nyacol,* 989 F.2d 1256, 1258 (1st Cir. 1993) (holding that the parties "cannot confer subject matter jurisdiction by agreement").

The better approach is to entertain the motion under Rule 12(b)(3) by treating the arbitration provisions as "a type of forum-selection clause," and consider the materials submitted with the motion bearing on that question. *Ibid.* (quoting *Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596 (7th Cir. 2015)).

III.

A court may dismiss a case for improper venue under Rule 12(b)(3) or the doctrine of *forum non conveniens*, or it may transfer it to a different forum if it is within the federal court system. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). If the agreed alternate forum is an arbitral forum, the court may compel arbitration, stay the case pending arbitration, and then afterward enter judgment on the award. *See* 9 U.S.C. §§ 3, 9.

Positive Energy argues that Hess's FLSA claim is a "dispute" under the terms of the Operating Agreement's arbitration clause, and therefore it should be dismissed and arbitrated. It maintains that Hess's conduct demonstrates that he also believed that the arbitration clause applied to his FLSA claim, because his attorney submitted written dispute notices to the defendant regarding this dispute.

There is no question that Hess's FLSA claim is arbitrable. Although an employment agreement "cannot be utilized to deprive employees of their statutory [FLSA] rights," *Tennessee Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 602 (1944), there is nothing inherently illegal about a contract that requires employment disputes, including FLSA disputes, to be brought only in an arbitral forum, *see Epic Systems Corp. v. Lewis*, --- U.S. ---, 138 S. Ct. 1612, 1619, 1624 (2018) (approving arbitration agreement as applied to a FLSA claim); *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) (same); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (approving arbitration agreement as applied to an age discrimination claim under the Age Discrimination in Employment Act); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003) (generally approving employment contract that compelled arbitration of a discrimination case under Title VII). Hess does not argue here that the defendant is endeavoring to use the arbitration agreement to deprive him of his alleged right to overtime pay.

Nor is there any serious dispute that Michigan law governs this case. "Although the [Federal Arbitration Act] generally preempts inconsistent state laws and governs all aspects of arbitrations concerning 'transaction[s] involving commerce,' parties may agree to abide by state rules of arbitration, and 'enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA.'" *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg*, 748 F.3d 708, 715-16 (6th Cir. 2014) (quoting *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 522-23 (6th Cir. 2012)). Here, the Operating Agreement clearly states the Agreement "shall be construed and enforced in accordance with and governed by the internal laws of the State of Michigan," and that the arbitration clause is made "subject to and incorporates the provisions of Michigan law governing arbitrations, [Michigan Compiled Laws §] 691.1681." Operating Agreement, §§ 9.2-9.3, ECF No 7-1, PageID.78-79. "Accordingly, the

parties unambiguously intended to displace the federal standard with Michigan law." *Savers Prop. & Cas. Ins. Co.*, 748 F.3d at 716.

But regardless of which law applies, "[a]rbitration is a matter of contract." *Altobelli v. Hartmann*, 499 Mich. 284, 295, 884 N.W.2d 537, 542-43 (2016) (quoting *Kaleva-Norman-Dickson Sch. Dist. No. 6 v. Kaleva-Norman-Dickson Sch. Teachers' Ass'n*, 393 Mich. 583, 587, 227 N.W.2d 500, 502 (1975)). And "[a] party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration." *Kaleva*, 393 Mich. at 587, 227 N.W.2d 500, 502. "[T]o ascertain whether the subject matter of a dispute is of the type that parties intended to submit to arbitration," the Court begins with "the plain language of the arbitration clause." *Altobelli*, 499 Mich. at 299, 884 N.W.2d at 545. The Court then considers "whether a plaintiff's particular action falls within that scope." *Ibid.*

Michigan law favors arbitration. The plaintiff, therefore, has the burden of demonstrating that the arbitration clause in the Operating Agreement does not apply to his FLSA claim. *Altobelli*, 499 Mich. at 295, 884 N.W.2d at 543. He argues that the parties did not intend to commit compensation disputes to arbitration. To ascertain whether he is correct, the Court looks to the plain language of the Agreement's arbitration clause. *Id.* at 299, 884 N.W.2d at 545.

The Operating Agreement's arbitration clause applies to "all disputes, claims or controversies *involving the interpretation of this* [Operating] *Agreement*." Operating Agreement, § 9.2, ECF No 7-1, PageID.78 (emphasis added). The Agreement does not involve or discuss member or employee compensation or employment, however. Instead, it contemplates that such matters will be governed by extrinsic agreements, noting that "Members shall not receive compensation for personal services provided to the Company unless otherwise agreed to in writing by the Members," and allowing that "a Member's employment agreement or other similar

agreement with the Company" may restrict or prevent Members from engaging in certain activities. *Id.*, §§ 5.2, 5.4, PageID.62. The "plain language" of the arbitration clause neither states nor implies an intent of the parties to arbitrate employment disputes like the plaintiff's overtime claim. *See Altobelli*, 499 Mich. at 299, 884 N.W.2d at 545.

In certain situations, Michigan law not only favors arbitration, but essentially requires it. In the context of collective bargaining agreements, for example, parties are bound to arbitrate so long as the disputed issue "arguably" falls within an arbitration clause. *See, e.g.*, *Port Huron Area Sch. Dist. v. Port Huron Educ. Ass'n*, 426 Mich. 143, 162, 393 N.W.2d 811, 820 (1986) (holding that disputes in the context of collective bargaining agreements should be arbitrated unless there is an "express provision excluding [a] particular grievance from arbitration"). This is not one of those situations, however, as Michigan Supreme Court's recent decision in *Lichon v. Morse*, --- N.W.2d ---, 2021 WL 3044458, at *7 (Mich. S. Ct. July 20, 2021), illustrates. There, the Michigan Supreme Court declined to extend the stricter arbitration rule outside of the bargaining context, reiterating "simply . . . that agreements to arbitrate should be read like any other contract." *Ibid.* Relevant here, the court also clarified what it means for the parties to have "agreed to arbitrate the question at issue." *Id.* at *9. Adopting a rule applied by other courts, it held that the key to deciding whether a dispute falls within the scope of an arbitration clause is whether "[the] action could be maintained without reference to the contract or relationship at issue." *Ibid.* (quoting *Academy of Med. of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St. 3d 185, 186, 842 N.E.2d 488 (2006)). The court then found that the parties in *Lichon* were not bound to arbitrate sexual harassment claims, even though they had signed an arbitration agreement that applied to "all concerns . . . relative to employment." *Id.* at *8. "Relating to," the court determined, is limiting

language that requires "more than the barest factual connection" between a claim and a "pertinent contractual relationship." *Id.* at *9.

Here, the arbitration clause in the Operating Agreement applies to claims "involving" the interpretation of that Agreement, or any of its "provisions, terms, conditions, termination or enforcement." Operating Agreement, § 9.2, ECF No 7-1, PageID.78. Hess argues convincingly that no such provision or term of the Agreement relates to employment, and the defendant has not demonstrated otherwise. Applying the rule in *Lichon*, it also is clear that the plaintiff's FLSA claim could be maintained without reference to the Operating Agreement. 2021 WL 3044458, at *9-10. That claim is not subject to arbitration.

Positive Energy's strongest argument for why the arbitration clause applies is that the plaintiff acted as if it did. Hess does not dispute that he repeatedly submitted dispute notices to the defendant, as required under the arbitration clause. However, the notices are not determinative, especially since they reference his wage claim *and* a claim as a member under the Operating Agreement itself.

Consider *Altobelli*, a factually analogous case which neither party cites. There as here, the parties disputed whether an arbitration clause in an operating agreement covered the plaintiff's employment claim, which the plaintiff first attempted to arbitrate before filing a civil complaint. *Altobelli*, 499 Mich. at 291-93, 884 N.W.2d at 541. Although the Michigan Supreme Court ultimately found that the plaintiff was bound by the arbitration clause, it did not weigh his initial resort to arbitration against him. Rather, it looked to the plain language of the arbitration clause and to the plaintiff's invocation of *other* substantive provisions in the operating agreement that he believed governed his wrongful-termination claim. *Id.* at 301-05; 884 N.W.2d at 545-48. The arbitration clause in *Altobelli* was much more expansive than the one in the present case, as it

applied to disputes "of any kind or nature whatsoever" including claims regarding "compensation, or the payment or non-payment of any bonus." *Id.* at 296; 884 N.W.2d at 543. Far from grounding his dispute in the Operating Agreement, Hess maintains that no provision of it applies to his overtime claim, which could be maintained without reference to the Operating Agreement. *See Lichon*, 2021 WL 3044458, at *9-10. "The mere 'existence of a contract between the parties does not mean that every dispute between the parties is arbitrable.'" *Ibid.* (quoting *Academy of Med.*, 108 Ohio St. 3d at 186, 842 N.E.2d at 494). *Altobelli* does not foretell the result here.

IV.

The arbitration agreement between the parties does not encompass the employment dispute under the FLSA set forth in the amended complaint.

Accordingly, it is **ORDERED** that the defendant's motion to compel arbitration and dismiss the case (ECF No. 5) is **DENIED**.

It is further **ORDERED** that the defendant file its answer to the amended complaint **on or before December 1, 2021**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   November 18, 2021